T.C. Memo. 2013-130

UNITED STATES TAX COURT

JOEL I. BEELER,  Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent<sup>*</sup>

Docket No. 20892-07L.                    Filed May 22, 2013.


<u>Richard Stephen Kestenbaum</u> and <u>Bernard Mark</u>, for petitioner.

<u>Marc L. Caine</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


    GOEKE, <u>Judge</u>:  This is a collection due process case on remand from the

Court of Appeals for the Second Circuit.  Given the mandate from the Court of

_____

    *This opinion supplements <u>Beeler v. Commissioner</u>, T.C. Memo. 2009-266,
<u>vacated and remanded</u>, 434 Fed. Appx. 41 (2d Cir. 2011).

**[\*2]** Appeals as explained herein, we sustain respondent's proposed collection action for a reduced amount.

Background

In <u>Beeler v. Commissioner</u>, T.C. Memo. 2009-266, <u>vacated and remanded</u>, 434 Fed. Appx. 41 (2d Cir. 2011), we addressed the only argument which we perceived Beeler had raised and ruled that argument was legally flawed. He had argued that respondent's filing of Form 688(Z), Certificate of Release of Federal Tax Lien, for a related tax lien operated to satisfy his trust fund obligations as a responsible officer under section 6672.[1] This position is simply incorrect, as Beeler conceded in the Court Of Appeals and the Court of Appeals acknowledged in its summary order. <u>Beeler v. Commissioner</u>, 434 Fed. Appx. 41. However, on appeal, Beeler argued that the trust fund obligation which had been reduced to a judgment in 1995 had in fact been previously satisfied by payment. In our earlier opinion we found that Beeler himself had not paid the judgment, and he presently does not argue that he actually paid it. Nevertheless, the Court of Appeals determined that we had not adequately explained why the judgment was not satisfied. The Court of Appeals stated as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]      Because of the lack of clarity in Beeler's Tax Court briefs, the Tax Court understandably only considered whether the filing of a Certificate of Release itself extinguishes a tax liability and did not state any reasons for determining that Beeler had not satisfied his TFRP [trust fund recovery penalty] obligation.  Instead, the Tax Court merely ruled on the legal issue  and concluded--without any analysis--that Beeler remained liable. Thus although  our review is for clear error, we conclude that the Tax Court has not sufficiently presented the factual basis for its finding, such as we may review it.  We therefore vacate the judgment of the Tax Court and remand this case for clarification of the factual basis for its finding that Beeler's TFRP liability was not satisfied.  [Id. at 42.]

The Court of Appeals also added a concern with the IRS' conduct in this

case in a lengthy footnote which reads as follows:

Although we resolve this appeal in the manner discussed above, we express concern over the Internal Revenue Service's conduct, including:  (1) its admittedly erroneous filing of the Certificate of Release of Federal Tax Lien; (2) its use of language in the Certificates of Release of Federal Tax Lien, "certify[ing] that [Beeler] * * * satisfied the taxes listed below and all statutory additions"; (3) its subsequent notice to Beeler of its intent to levy his property five years after releasing the liens; (4) adopting a policy in the since-removed Section 5.17.2.3.6 of the Internal Revenue Manual ("I.R.M."), which facially contradicts I.R.C. § 6325(f)(2); (5) the general failure at maintaining accurate records concerning what taxes were owed and what payments were made by Beeler--at least as presented in the appellate record; (6) erroneously making entries in the account transcripts of Equidyne's other officers, Stuart Ross and Robert Liebmann, that indicated that the statute of limitations on collection of judgments against them had expired.  We do not address whether this conduct has any legal impact on Beeler's underlying tax liability and write only to express our concern over the IRS's handling of this matter.  [Id. at 43 n.2.]

**[\*4]**   We construe the Court of Appeals' mandate to be that we determine not simply whether Beeler paid the judgment but whether either of the other two parties held to be responsible persons for the trust fund obligation might have satisfied the judgment, thus relieving Beeler of his obligation to pay in the posture of the case presented on appeal.  A second trial was conducted and additional evidence was admitted.  This opinion explains why we find on the present record that a portion of the obligation should be deemed paid.

We will not reiterate all the findings from our earlier opinion but rather will focus primarily on the record regarding the possible payment of the responsible person penalty.

The liability at issue is the trust fund recovery penalty (TFRP) for the taxable period ending March 31, 1982.  A judgment based upon this liability was entered against Beeler and two other officers of Equidyne Management, Inc. (Equidyne), Stuart Ross (Ross) and Robert Liebmann (Liebmann), 13 years after the corporation failed to pay the employment taxes for quarters in 1982.  The opinion related to this judgment is reported at Beeler v. United States, 894 F. Supp. 761 (S.D.N.Y. 1995).  The judgments against the three individuals were not in the same amounts.  The judgment was against Beeler for $154,032.05, against Ross for $117,483.72, and against Liebmann for $153, 984.92.  At  the second

**[*5]** trial, it was not contended that Liebmann made any significant payment on the judgment against him, and Beeler did not argue that he himself paid any portion of the judgment against him. The factual dispute remaining is whether in bankruptcy proceedings the judgment against Ross was collected. Given the fact that the judgment against Ross was less than the judgment against Beeler, it would appear the judgment against Beeler could not have been satisfied in full through payments in Ross' bankruptcy proceedings; but as the Court of Appeals has observed, Beeler was informed on several occasions by the Internal Revenue Service (IRS) that his liability had been satisfied.

Until the judgments against the three responsible officers in 1995, there are no apparent irregularities in the efforts to collect the unpaid trust fund liabilities; and Beeler's participation in Equidyne's failure to meet its trust fund obligations is explained in detail in the District Court's opinion. He does not come to the current case free of blame for the fact the TFRP remained unsatisfied from 1982 through 1995.

Ross filed a petition for bankruptcy on December 8, 1983. Related to this complex bankruptcy proceeding, $80,860.20 was paid to the IRS on behalf of Ross pursuant to a global settlement among the IRS, the trustee of American Leisure Industries, the trustee of Ross' bankruptcy, and others on October 10,

**[*6]** 1995.  Ross owed various liabilities to the IRS, and it is uncertain whether this payment satisfied a portion of the judgment against Ross arising from the TFRP.  The record in the present case does not reflect any payments to the IRS for the TFRP in the Ross bankruptcy proceedings.

The TFRP was assessed on March 25, 1985.  After the assessment the IRS filed notices of Federal tax lien in New York County, New York and Sarasota, Florida.

In November 1986 Beeler commenced the action in the District Court for the Southern District of New York which led to the judgments against him, Ross, and Liebmann.  He sought the refund of $124. 28 paid toward the assessed amount.  The United States filed a counterclaim against Beeler and third-party actions against the other two which resulted in the judgments in September 1995.

Despite the judgments and the IRS transcripts of account which do not show any significant payments by Beeler, Ross, or Liebmann, the IRS filed certificates of release of Federal tax lien in both New York County and Sarasota in February 2000.  Why this happened is one of the principal factual issues in this case.  Beeler's account with the IRS contained a code, TC 520 CC80, which indicates pending litigation.  This code was appropriate while the District Court case was pending but should have been removed in 1995.  It was not removed until 2005.

**[\*7]** The IRS employee who discovered the code in 2005 had no prior history in this matter, no knowledge of any collection activities, and no involvement in Ross' bankruptcy. The inexplicable failure by IRS employees to realize the District Court had entered a judgment against Beeler resulted in the IRS' incorrectly computing the period of limitations, incorrectly failing to list the TFRP as a liability in correspondence sent to Beeler in 1997, and incorrectly releasing the tax lien in 2001.

Discussion

## I. Burden of Proof

Under Rule 142(a)(1), the burden of proof is generally upon the taxpayer except as otherwise provided by statute or determined by the Court. At the outset of the second trial in this case, the Court determined that because of the unique factual circumstances and the mandate of the Court of Appeals, the burden of proof regarding any third-party payments of the TFRP should be on respondent. Respondent continues to object to this ruling, and we will begin with an explanation.

Generally, IRS records of a taxpayer's account are presumed accurate and can be relied upon such that it is logical to require the taxpayer to provide the evidence to support any challenge those records. In the present case, the first trial

[*8] record shows as does the supplemental record in the second trial that the IRS' records reflect no payment made regarding Beeler's TFRP account. Obviously, this evidence was not deemed compelling by the Court of Appeals; and given the IRS' admitted errors in the transcripts of account, it is not difficult to understand why. Because it is reasonable to expect Beeler to know what he has paid, even after all these years, we would not shift the burden of proof regarding his own payments; but it is not disputed that he made none.

After the IRS errors noted by the Court of Appeals and the lapse of time, we do believe this case requires respondent to prove by a preponderance of the evidence that neither Liebmann nor Ross paid the TFRP in whole or in part so as to relieve Beeler of his liability. There were admitted irregularities in the IRS' records in this case, and those errors are largely responsible for the current controversy. Accordingly, respondent must now bear the burden of proof.

## II. Other Potential Payers

### A. Liebmann

The parties have stipulated Liebmann's declaration in which he states definitively that he did not pay any significant amount in satisfaction of the TFRP. Beeler does not maintain that Liebmann paid the liability.

**[*9]**  B.  Equidyne

Equidyne no longer existed as a corporate entity at the time of the TFRP judgments against Beeler, Liebmann, and Ross.  By a preponderance of the evidence we find that Equidyne made no payments in satisfaction of the TFRP.

C.  Ross

Two witnesses testified about their analysis of the incomplete records regarding payments made by the trustee of the bankruptcy of Ross and the trustee of American Leisure Industries.  Neither witness had contemporaneous knowledge of the bankruptcy proceedings.  One of these witnesses was Beeler, who propounded his theory that two separate payments flowed through the trustees to the IRS to pay the TFRP.  One of these payments, of $64,000, was actually a transfer between the trustees, and there is no evidence to support the assertion the amount was paid to the IRS.  Beeler's representatives do not assert on brief that the $64,000 amount was ever actually paid to the IRS.  However, in the subsequent  global settlement by both trustees and various creditors, $80,860.20 was paid to the IRS.  For what specific liabilities of Ross or American Leisure Industries this payment was made is unknown as the IRS' records regarding the bankruptcy payments have long been destroyed.  The other witness on this topic was an IRS bankruptcy specialist who credibly testified on the basis of the

[*10] bankruptcy documents in the record that the only payments specifically made for Ross' liabilities from Ross' personal bankruptcy were paid for income tax liabilities, not the TFRP. The same witness admitted that he could not specify what liabilities were satisfied by the $80,860.20 payment. Because Ross went into bankruptcy long before the judgment against him, the bankruptcy trustee payments would be the only source that could have satisfied the TFRP judgment against him. We previously noted that the judgment against him was less than the judgment against Beeler by roughly $40,000. Accordingly, the preponderance of the evidence would not support the theory that the trustees totally satisfied the judgment against Beeler. In addition, the nature of the global Ross bankruptcy settlement in the fall of 1995 makes it unlikely a separate payment of $64,000 preceded the $80,860.20 payment. However for the reasons explained earlier, we will hold the uncertainty as to what was satisfied by the $80,860.20 against respondent and find that this payment should be offset against Beeler's TFRP judgment.

There is an anomaly in the IRS' records of Ross which show $60,773.19 credited with a code of 231 in 1994 . We are satisfied, upon a preponderance of the evidence, that this was not a payment, but rather that the entry was to offset a previous error. In any event, we have credited Beeler's liability for an amount in

**[*11]** excess of this entry on the basis of the subsequent global settlement in the Ross-related bankruptcies.

In conclusion, we hold by a preponderance of the evidence that the only amount which could have satisfied the TFRP was $80,860.21 and that respondent has failed to show this amount should not be credited to offset Beeler's liability. A computation will be required to fix the current liability which should be subject to collection.

Decision will be entered

under Rule 155.